Marvin F. FIELD, Plaintiff,

v.

Jack S. FREEDMAN, et al., Defendants.

Civ. A. No. 81–2075.

United States District Court,
D. Kansas.

Dec. 8, 1981.

John A. Price, Weeks, Thomas & Lysaught, Overland Park, Kan., Charles E. Hammond, Sullivan, Bodney & Hammond, Kansas City, Mo., for plaintiff.

William V. North, North, Lancaster & Dickson, Overland Park, Kan., John R. Cleary, Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter comes before the Court on plaintiff's motion to disqualify the law firm representing defendant Douglas Industries, Inc. and the other individual defendants in this case. A hearing was held on said motion on November 24, 1981. It is plaintiff's position that the law firm which has entered its appearance on behalf of all the named defendants should be disqualified from so acting by various provisions of the Code of Professional Responsibility [hereinafter CPR], which apply to attorneys practicing before this Court by Local Rule 4(h). The Court makes the following findings and conclusions.

### I

Plaintiff, a minority shareholder of common stock and a former employee of defendant Douglas Industries, Inc. [hereinafter Douglas], instituted this class action derivative suit on March 25, 1981. The named defendants include: (1) Douglas Industries, Inc. (which has been liquidated and dissolved in accordance with a sale of its assets to Schering Vet, Inc.); (2) Jack, Mary and Ronald Freedman [hereinafter the Freedmans] (at all times officers and/or directors and controlling persons of Douglas Industries, Inc. and Jackson Biologics, Inc.); and (3) Jackson Biologics, Inc. [hereinafter Jackson] (wholly-owned and controlled by the Freedmans). Plaintiff brought the action under Sections 10(b), 14(a) and 20 of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78n(a) and 78t, respectively, and Rules 10b–5 (17 C.F.R. § 240.10b–5) and 14a–9 (17 C.F.R. § 240.14a–9) promulgated

thereunder. In addition, pendant claims were brought derivatively against the individual defendants for breach of fiduciary duties, conversion of corporate assets, and common law fraud and deceit under the laws of the state of Kansas.

The firms of Linde, Thomson, Fairchild, Langworthy, Kohn & Van Dyke [hereinafter Linde-Thomson] of Kansas City, Missouri, and North, Lancaster & Dickson of Overland Park, Kansas, entered their appearances on behalf of all of the named defendants. As representatives for and on behalf of all defendants, designated counsel have filed: (1) a joint answer to plaintiff's complaint, including a counterclaim against plaintiff by defendant Douglas; and (2) a joint motion for an order setting a schedule to resolve class action issues, including: (a) a restriction on communications with other potential class members; (b) a limitation of discovery to issues relating to class certification; and (c) a challenge to plaintiff's ability to adequately represent the class members.

Plaintiff seeks an order: (1) disqualifying counsel of record for defendants from further representation of defendant Douglas and the other named defendants; (2) striking the responsive pleadings filed by said counsel on behalf of the defendants; and (3) setting a date certain for filing new responsive pleadings by defendants.

Defendant Douglas was a Colorado corporation with its general offices and manufacturing facilities located at 8906 Rosehill Road, Lenexa, Kansas. Douglas' principal line of business since approximately 1971 was the manufacture and production of veterinary vaccines for which licenses are granted by the U.S. Department of Agriculture. At all times herein pertinent, Douglas was controlled by the Freedmans, who in 1981 owned fifty-four percent (54%) of Douglas' stock.

Defendant Jackson is a closely-held Florida corporation with its principal office in Naples, Florida. Jackson is engaged in research and development of biologicals, including vaccines and technology for the pro-

duction of adjuvants (used to hold vaccines at the site of an injection and draw antigens to that site). Prior to January 6, 1981, Jackson licensed Douglas to use certain adjuvant technology and leased to Douglas certain real property (consisting of research and development facilities). At all times herein pertinent, Jackson was wholly-owned and controlled by the Freedmans.

Defendant Jack S. Freedman is a citizen of the state of Florida, residing in Naples, Florida. At all times herein pertinent, he was a director and controlling person of defendant Douglas (president until 1977) and defendant Jackson (president since 1975). He is the husband and father, respectively, of defendants Mary S. Freedman and Ronald S. Freedman.

Mary S. Freedman is a citizen of the state of Florida, residing in Naples, Florida. At all times herein pertinent, she was a director and controlling person of defendant Douglas (treasurer and executive secretary to the chairman of the board of directors) and defendant Jackson (vice-president since 1976).

Ronald S. Freedman was, during the principal time period herein involved, a citizen and resident of the state of Missouri. In addition, he was a director and controlling person of defendant Douglas (secretary-treasurer until 1977 and president since 1977) and defendant Jackson (vice-president until 1976 and secretary-treasurer since 1976).

Plaintiff Marvin F. Field is a citizen and resident of Leawood, Kansas. At all times herein pertinent, he was a minority shareholder of common stock of Douglas. In addition, plaintiff was previously employed by Douglas as a microbiologist involved in research and development of vaccines for small animals, including "rabies vaccine, killed virus, hamster cell line origin," product code 1905.20 (hereinafter the "New Vaccine").

Basically, plaintiff's causes of action arise from two series of transactions, namely: (1) the Freedmans' wrongful diversion and conversion of corporate assets and corporate opportunities over a period of several years; and (2) fraud in connection with the sale of Douglas' assets to Schering Vet, Inc.

Commencing in 1977, if not before, the Freedmans, while acting as directors and officers of Douglas, utilized their corporate positions and control in order to benefit themselves and their wholly-owned corporation (Jackson) to the detriment of Douglas and its minority shareholders. Plaintiff challenges several transactions between Douglas and Jackson.

First, on or about June 16, 1977, Jackson entered into a license agreement with Douglas, whereby Jackson licensed Douglas to utilize certain technology purportedly developed and owned by Jackson for the production of adjuvants essential to the production of Douglas' vaccines. Through the fiscal year 1980, the royalty paid by Douglas to Jackson was in excess of Two Hundred Fifty Thousand Dollars ($250,000.00).

Second, prior to the negotiated sale of Douglas' assets to Schering Vet, Inc., certain valuable property of Douglas was transferred to Jackson. Specifically, that property included, in part: (a) all rights, title and interests (including licensing rights) in the New Vaccine, developed by employees of and belonging to Douglas; and (b) various items of equipment and facilities utilized for the production of vaccines, acquired by and belonging to Douglas.

Subsequent to the foregoing transactions, a proxy statement was issued to all shareholders outlining the substance of the proposed sale of Douglas to Schering for Five Million One Hundred Forty-Eight Thousand Nine Hundred Fifteen and 02/100 Dollars ($5,148,915.02) cash, and the sum of Five Million Seventy-Six Thousand Eighty-Four and 98/100 Dollars ($5,076,084.98) in the form of a promissory note. The bottom line for shareholders was the resulting payment of Five and 11/100 Dollars ($5.11) per share for redemption of minority (non-control) shares of common stock. Additional terms were provided, however:

(a) Jackson and Douglas would terminate leases of certain property and equip-

ment, and a new lease with a purchase option would be entered into between Jackson and Schering;

(b) Jackson would, immediately prior to closing, transfer all right, title and interest in certain adjuvants to Douglas, and a license agreement between Jackson and Douglas would be terminated;

(c) Douglas would sell, convey, assign, transfer and deliver all real and personal, tangible and intangible properties and assets to Schering; and

(d) by separate agreement, Jackson would license Schering to manufacture, produce and distribute the New Vaccine represented to have been developed by Jackson, in exchange for the payment by Schering of a royalty of four percent (4%) of the gross sales of the New Vaccine or other combination products.

By vote of the shareholders, the sale to Schering was approved on January 31, 1981. Each minority shareholder was given one year in which to redeem his shares. Presumably the transaction has been closed; it was undisputed at the hearing that Douglas is in the process of complete liquidation.

Plaintiff alleges that: (1) Jackson has never possessed or owned any technology for the production of adjuvants, and that the royalties paid by Douglas to Jackson since 1977, as authorized by the Freedmans, were therefore improper and without consideration; (2) that the transfer of Douglas' items of equipment and facilities utilized for the production of vaccines to Jackson and the subsequent lease-back to Douglas thereof was without consideration and otherwise improper; (3) that the transfer of the New Vaccine to Jackson was without consideration and otherwise improper; (4) that the prior transfers or conversions of corporate properties and opportunities to Jackson, prior to the sale of Douglas' assets to Schering, decreased the value of Douglas' assets and, concomitantly, the value received by Douglas' minority shareholders pursuant to that sale; (5) that the sale of Douglas' assets to Schering, considered alone and in combination with the related transactions between Jackson and Schering, benefitted the Freedmans and their wholly-owned corporation to the detriment of Douglas and its minority shareholders; and (6) that in the process of soliciting approval of the minority shareholders of Douglas for the sale of assets to Schering, the Freedmans misrepresented the facts, omitted to state material facts, and otherwise failed to disclose material information.

Plaintiff's causes of action are intended to benefit those holding minority shares of Douglas as of the date of approval of the sale of assets to Schering. Since Douglas has sold its assets, and a sale price is in the process of being distributed to the stockholders in the liquidation procedure agreed to, any recovery derivatively will have the effect of increasing the assets of Douglas available for distribution to those minority stockholders, thereby enhancing any class action recovery. Since the Freedmans are sued individually and alleged to be the principal wrongdoers, they are excluded from the class and will not be entitled to share in any recovery realized by plaintiff's suit.

## II

Plaintiff contends that Linde-Thomson must be disqualified for three ethical reasons: (1) that Linde-Thomson's representation of the officers and directors of a corporation while at the same time representing the corporation poses an irreconcilable conflict of interest; (2) that because the position of Douglas in this litigation is that of plaintiff (although named defendant, Douglas stands to benefit if plaintiff prevails), there is the distinct possibility that Linde-Thomson will use secrets and confidences obtained in its attorney-client relationship with Douglas to the advantage of the former directors and officers of Douglas and to the disadvantage of Douglas; and (3) that by having represented Douglas and the named defendants in the alleged fraudulent transactions and sale to Schering, there is the distinct possibility that members of the Linde-Thomson firm will be called as witnesses at trial, or may be deposed concern-

ing their knowledge of discoverable material.

■ Disqualification of an attorney chosen by a party to represent him in a lawsuit is a serious matter. Courts have the inherent power to disqualify counsel where necessary to preserve the integrity of the adversary process. Where an attorney's conflict of interest undermines the Court's confidence in the vigor of his representation of his client, the Court may disqualify the attorney. *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2nd Cir. 1977). Where an attorney's former representation of a client places him in the position of having the potential to use confidential information against the client in subsequent litigation, disqualification may likewise be ordered. *Id.; T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F.Supp. 265 (S.D.N.Y.1953). However, each case must be decided on its own peculiar facts. *United States v. Standard Oil Co.*, 136 F.Supp. 345 (S.D.N.Y.1955).

■ The immediate preventive measure sought by plaintiff is indicated only where the offending attorney's conduct threatens to "taint the underlying trial" with a serious ethical violation. *W.T. Grant Co. v. Haines*, 531 F.2d 671 (2nd Cir. 1976). There are, in this Court, in the state of Kansas, and in every other state, detailed and pervasive rules and enforcement machinery to deal with ethical violations. The CPR sets guidelines which every attorney must meet in his practice. The decision to obey the dictates of the CPR, however, lies in the first instance with the individual attorney himself.

### A

Plaintiff's first argument is that any recovery in this action will accrue to the benefit of Douglas, and establish of necessity the liability of the Freedmans. Plaintiff's claim is that because the Freedmans usurped corporate opportunities and otherwise defrauded the corporation, it is unethical and improper for the same law firm to represent both the defrauding directors and officers and the corporation they allegedly defrauded.

■ The better reasoning on this issue lies with the defendants, however. Plaintiff himself characterizes this case as one by the minority shareholders of a defunct corporation against the majority shareholders, and the Court so finds. The Court finds that Douglas has no interest adverse to the defendants, and no potential for recovery from them should plaintiff's charges be proved. Any recovery would come from the pockets of the officers and directors and go almost directly into the pockets of plaintiff and plaintiff-shareholders.

Plaintiff makes a great issue of the counterclaim against him by Douglas, but whatever that counterclaim represents, it does not prove an adverse interest between Douglas and the other named defendants. At most, it proves an adversity of interests between Douglas and plaintiff individually.

The application of Canon 5, CPR, requires at the outset interests on the part of separate clients which are or may be adverse to one another. Plaintiff has made no record which would allow the Court to find at this time as a matter of law that such adverse interests are present or are likely to become present. Of course, at a later point in this litigation, it may very well become apparent that a conflict of interests exists which threatens to taint the adversary process, but at this point the Court finds plaintiff has not proved a conflict of interests on the part of opposing counsel.

### B

Linde-Thomson stipulates that it represented Douglas continuously from 1973 to the present in a variety of capacities. Plaintiff argues that in its continuous representation, the Linde-Thomson firm may have acquired secrets and confidences which it now might use against Douglas in order to defend the other named defendants. Plaintiff characterizes this situation as one in which a law firm is representing a client against a former client, and may use the former client's secrets and confidences against him.

The Court does not so view the situation. There is no evidence to indicate that the firm of Linde-Thomson is in possession of any secrets and confidences which were not imparted to that firm by the very same directors and officers of Douglas which the firm seeks to defend in this case. Similarly, there is nothing in the record to show that any secrets or confidences, if they exist, would be used or might be used against Douglas.

Canon 4 requires a lawyer to preserve the secrets and confidences of his client, and instructs a lawyer never to accept employment against a former client where the matter in controversy is substantially related to the subject-matter of his earlier representation. Douglas' status as a defunct corporate entity may altogether remove it from the status of a former client. *International Electronics Corp. v. Flanzer*, 527 F.2d 1288, 1292 (2nd Cir. 1975) (merged corporation or sold corporation not protected by Canon 4). In any event, there must be some facts in the record to enable the Court to make a finding that an ethical violation has or will occur. *Fullmer v. Harper*, 517 F.2d 20 (10th Cir. 1975). It is not in every case that a lawyer must disqualify himself where he undertakes a suit adverse to the interest of a former client; the issue is the relationship the subsequent representation has with the former representation. *Canon v. U.S. Acoustics Corp.*, 398 F.2d Supp. 209, 222–23 (N.D.Ill.1975), *aff'd in part* 532 F.2d 1118 (7th Cir. 1976). On the record before the Court, there is no basis at all to make any findings as to the degree to which Linde-Thomson's former representation of Douglas is related to their present representation of both Douglas and the former directors and officers of that corporation. Similarly, the Court has no basis by which to assess the possibility that secrets and confidences reposed by Douglas in Linde-Thomson might be used against it.

The burden in a motion to disqualify is on the moving party, and the Court finds that the movant herein has not met his burden.

## C

A substantial part of plaintiff's cause of action revolves around the wrongful payment to Jackson of money and property of Douglas, the wrongful sale and liquidation of Douglas, and misrepresentations in the proxy statement to minority shareholders in connection with the sale of Douglas' assets. The attorneys who worked on the transfers of property, assets and money, and the attorneys who worked on the proxy statement may be called as witnesses for plaintiff or may be deposed for their knowledge of discoverable facts. Because these attorneys are associated with Linde-Thomson, plaintiff argues the entire law firm must be disqualified.

The disciplinary rules to which plaintiff refers are DR 5–102(A) and 5–102(B). These rules read as follows:

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

The Court finds that there was no showing that any member of the Linde-Thomson law firm obviously is going to be, or ought to be, called as a witness on behalf of any of the defendants. Furthermore, the Court finds that there was no showing at all that any testimony by a member of the Linde-Thomson firm would be prejudicial to any defendant.

Disciplinary Rule 5–102 is not a rule to be applied *per se* according to its terms, but rather it is a rule which should be applied according to the "attending facts" in each case. *Greenebaum-Mountain Mtg. v. Pioneer Nat. Title Ins. Co.*, 421 F.Supp. 1348, 1352 (D.Colo.1976). The critical question is not whether or not a lawyer will be called as a witness, but whether the litigation can be conducted in fairness to all if the attorney is a witness. An attorney should not be disqualified unless the ethical problem posed by his role as a witness taints with misconduct the trial and the underlying adversary process. An entire law firm need not be disqualified simply because one member of that firm will be a witness on a material fact. *Id.* at 1353, 1354.

In this case, plaintiff has not disclosed the nature and content of the discoverable knowledge possessed by members of the Linde-Thomson firm. The ethical problem therefore posed by Linde-Thomson's continuing representation of defendants is not apparent to the Court. For that reason, plaintiff's motion to disqualify must be denied.

### III

In *Fullmer v. Harper*, 517 F.2d 20 (10th Cir. 1975), the Tenth Circuit Court of Appeals mandated the district courts to make findings of fact and conclusions of law in ruling on motions to disqualify opposing counsel. This requirement enables the Court on appeal to have a record before it which will permit meaningful review. The parties are cautioned that the Court's findings of fact in this Memorandum and Order in no way prejudge any issues in this case, and in no way bind the parties except as they are used in this Memorandum and Order deciding this motion.

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's motion to disqualify opposing counsel is hereby denied. The record before the Court does not allow the conclusion that an ethical violation is occurring· or is about to occur. IT IS THEREFORE FURTHER ORDERED that

this case be returned to the United States Magistrate for further pretrial proceedings.