Rodney D. BECK, et al., Plaintiffs,

v.

BOARD OF REGENTS OF the STATE
OF KANSAS, University of Kansas
Medical Center, et al., Defendants.

Myrtle A. WILLIAMS, et al., Plaintiffs,

v.

BOARD OF REGENTS OF the STATE
OF KANSAS, University of Kansas
Medical Center, et al., Defendants.

Civ. A. Nos. 83-2094, 83-2095.

United States District Court,
D. Kansas.

Aug. 5, 1983.

John E. Shamberg, Lynn R. Johnson, Gerald T. Elliott, Ruth M. Benien, Schnider, Shamberg & May, Chartered, Shawnee Mission, Kan., for plaintiffs.

Kenneth J. Reilly, Boddington & Brown, James R. Goheen, McAnany, Van Cleave & Phillips, John J. Bukaty, Jr., Williamson, Cubbison & Hardy, Steven L. Ruddick, John C. McFadden, Sp. Asst. Attys. Gen. for Kan., Kansas City, Kan., Charles E. Simmons, Chief, Bernard J. Dunn, Kan. Dept. of Corrections, Legal Div., Robert T. Stephan, Kan. Atty. Gen., Leslie A. Kulick, Bruce E. Miller, Asst. Kan. Attys. Gen., Topeka, Kan., Steven D. Ruse, James P. O'Hara, Shughart, Thomson & Kilroy, Frank Saunders, Jr., Jerome V. Bales, Sally H. Harris, Wallace, Saunders, Austin, Brown & Enochs, Bryan E. Nelson, Ronald W. Nelson, Nina R. Schloesser, Alder, Nelson & McKenna, Overland Park, Kan., D. Gary Hunter, Cooke, Ballweg, Borth, Hunter & Simpson, Prairie Village, Kan., Larry L. McMullen, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court upon motion of defendants' Charles Hartman, M.D., and Jack Pearson to disqualify plaintiffs' counsel, the law firm of Schnider, Shamberg & May, Chartered, from representation of Rodney D. Beck and Myrtle A. Williams.

It is defendants' position that the law firm of Schnider, Shamberg & May, Chartered, should be disqualified from this representation in accordance with various provisions of the Code of Professional Responsibility [CPR], which apply to attorneys practicing before this court pursuant to Rule 4(h) of the Rules of Practice for the

United States District Court for the District of Kansas.

Plaintiffs have requested oral argument on the motion. After giving due consideration to the briefs provided by counsel, however, the court determines oral argument would not be of material assistance and therefore denies the request.

The relevant facts are as follows. On March 18, 1983, plaintiffs, through their counsel, Schnider, Shamberg & May, Chartered, commenced two civil rights actions in the United States District Court for the District of Kansas, styled *Beck, et al. v. Kansas Adult Authority, et al.,* Case No. 83–2094, and *Williams, et al. v. Kansas Adult Authority, et al.,* Case No. 83–2095. Included as defendants in both actions are the University of Kansas Medical Center, Dr. Charles Hartman, Vice-Chancellor for Clinical Affairs at the Kansas University Medical Center [Medical Center], and Jack Pearson, Director of the Medical Center Police Department. The complaint alleges, *inter alia,* the University and the related individual defendants failed to provide adequate police protection at the Medical Center Emergency Room and engaged in activities constituting medical malpractice in the treatment of a non-party who committed two homicides on the Medical Center property.

At the time of these alleged incidents, Dr. David Waxman was serving as Executive Vice-Chancellor of the Medical Center. He is still serving in this capacity, but has tendered his resignation to be effective September 1, 1983. As Executive Vice-Chancellor, Dr. Waxman is the senior executive officer of the Medical Center and is responsible for the operation of all departments within the Medical Center, both clinical and academic, including the operation of the Emergency Room. (Affidavit of David Waxman, M.D.)

Dr. Waxman was not named as a defendant in either the *Beck* or *Williams* lawsuits in any capacity. On March 20, 1983, the relevant statute of limitations expired as to these cases.

Prior to the filing of these lawsuits, the law firm of Schnider, Shamberg & May, Chartered, had represented Dr. Waxman as a defendant in a civil rights action brought by an employee of the School of Allied Health. It appears that on May 26, 1982, Sandra J. Petersburg, a non-tenured Assistant Professor of the Department of Dietetics and Nutrition and former Assistant Dean of the School of Allied Health, filed an action pursuant to 42 U.S.C. §§ 1983, 1985(3) and 1988 alleging employment discrimination. Ms. Petersburg, whose employment was subject to yearly reappointment or non-reappointment, had not been reappointed to her position as an Assistant Professor in the Department of Dietetics and Nutrition, nor had she been reappointed as Assistant Dean of the School of Allied Health. Named in the suit as defendants were Dr. Strata Norton, Dean of the School of Allied Health, College of Health Sciences and Hospital, University of Kansas, and Dr. David Waxman. Dr. Waxman appears to have been named as a defendant due to his general administrative authority over the policies and operations of the college, including his authority over the School of Allied Health, and due to his role in advising and consenting to the actions of Dr. Norton.

Both Dr. Waxman and Dr. Norton, through their membership in the University of Kansas Teachers and Employees Association, had purchased from North East Insurance Company [North East], a policy for liability insurance for civil rights claims concerning employment discrimination. Plaintiffs' law firm, Schnider, Shamberg & May, Chartered, is one of several law firms which represent North East in civil rights litigation. In accordance with this arrangement, Schnider, Shamberg & May, Chartered, were asked to represent Dr. Waxman and Dr. Norton in their individual capacities in the *Petersburg* litigation. The Attorney General's Office for the State of Kansas provided the University of Kansas College of Health & Sciences and Hospital with representation in that case. In like manner, the Attorney General's Office provides

the representation for the Medical Center in the *Beck* and *Williams* cases.

In mid-September of 1982, in response to a motion to dismiss filed by the University of Kansas and defendants Waxman and Norton, plaintiff filed a first amended complaint dismissing the University of Kansas. A second motion to dismiss was filed in late September of 1982 by Schnider, Shamberg & May, Chartered, on behalf of Dr. Waxman and Dr. Norton. This motion was granted on March 31, 1983. Time for appeal has since run.

Prior to filing the *Beck* and *Williams* cases, two representatives from plaintiffs' law firm, Sheila M. Janicke and Lynn R. Johnson, met with Dr. Waxman, Mr. Jay McFadden, Special Counsel for the Medical Center, and Mr. Gene Staples, the Hospital Administrator for the Medical Center, and informed Dr. Waxman of the nature of the claims being made and the defendants being sued in the *Beck* and *Williams* cases and further informed Waxman of their representation of plaintiffs herein.

It is at this juncture that defendants' motion to disqualify the law firm of Schnider, Shamberg & May, Chartered, comes before the court for consideration.

Specifically, defendants Hartman and Pearson contend plaintiffs' law firm must be disqualified for the following ethical reason: plaintiffs' counsel's once simultaneous, now former, representation of the Chief Executive Officer of a defendant in the present action and of plaintiffs Beck and Williams in the present action, constitutes an impermissible conflict of interest. This conflict, assert defendants, compromises Dr. Waxman's rights of confidentiality and unbiased representation in the *Petersburg* action and jeopardizes defendants' right to a fair and honest proceeding in the *Beck* and *Williams* cases. Defendants further contend that in the course of representing Dr. Waxman in the *Petersburg* matter, plaintiffs' counsel had access to confidential information regarding policy and administration of the Medical Center and access to the Medical Center's methods and patterns of decision-making. Defendants also contend

plaintiffs' counsel had access to confidential information regarding the supervision of subordinate employees of the Medical Center.

 The decision to disqualify an attorney chosen by a party to represent him in a lawsuit is of serious concern and the courts inherent power to do so should only be exercised where the integrity of the adversary process is threatened. Even then, the court should not act unless "the offending attorney's conduct threatens to 'taint the underlying trial' with a serious ethical violation." *Field v. Freedman*, 527 F.Supp. 935, 940 (D.Kan.1981). Whether or not the underlying trial may become tainted must be addressed in each case based on its own specific facts. *United States v. Standard Oil Co.*, 136 F.Supp. 345 (S.D.N.Y.1955).

### Standing

 Plaintiffs' counsel first counter defendants' charge of conflict of interest alleging defendants Hartman and Pearson lack standing to raise the disqualification issues presented in their motion. As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification. See *In Re Yarn Processing Patent Validity Litigation*, 530 F.2d 83, 88 (5th Cir.1976); *Black v. State of Missouri*, 492 F.Supp. 848 (W.D.Mo.1980).

An exception exists, however, where the interests of the public are so greatly implicated that third parties, such as the defendants in this motion, are found to be entitled to raise any apparent conflicts of interest which may tend to undermine the validity of the proceedings.

 Wherever the actions of a member of the bar may in the eyes of the public cast even the appearance of an impropriety upon the legal profession, there exists an ethical duty upon each member of the bar and upon the court itself to examine the conduct and determine if a breach of professional ethic has occurred or is about to occur.

■ The court concludes on the particular facts of this action that the defendants in this action have standing to bring these allegations of conflict of interest to the court's attention, even though the client whose interest may be affected did not expressly object to the alleged conflict. The court finds the confidence in the integrity and efficiency of the legal system and the legal profession to be under scrutiny in this action, and thus one which the court must examine.

At the outset, the court notes that when plaintiffs' counsel accepted employment in the *Beck* and *Williams* cases, they were *simultaneously* representing Dr. David Waxman as a defendant in an unrelated employment discrimination action. Although the court disapproves of simultaneous representation of possibly or potentially adverse clients, and believes that such dual representation may in some instances indeed be a violation of the Code of Professional Responsibility, the court does not find, under the facts of this case, such a violation requires disqualification of plaintiffs' counsel. Moreover, the court notes that since the filing of the motion for disqualification, the date for the filing of a timely appeal in the *Petersburg* case has expired. Hence, Dr. Waxman's position as it relates to the law firm of Schnider, Shamberg & May, Chartered, is that of a former client, and it is in this posture that the court will address the merits of the motion presently before this court.

Essentially, defendants claim violations by plaintiffs' counsel of the Code of Professional Responsibility under Canons 4 and 5, requiring disqualification of plaintiff's counsel. These canons state:

"Canon 4

"A Lawyer Should Preserve the Confidences and Secrets of a Client.

"Canon 5

"A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client."

A violation of Canon 4 occurred, argue defendants, in that while plaintiffs' counsel were preparing to file their cases in *Beck* and *Williams* they were privy to the innermost workings of the Medical Center and maintained access to the internal affairs and administration of the Medical Center through their attorney-client relationship with Dr. Waxman. Dr. Waxman, defendants argue, as a present client of Schnider, Shamberg & May, Chartered, at the time the prefiling investigations were being undertaken in the present lawsuits, was entitled to the assurance that any information or confidences or secrets that he disclosed to his attorneys would not be later used to his disadvantage. Defendants argue plaintiffs' counsel have not preserved the confidences and secrets of Dr. Waxman, in violation of Canon 4 of the Code, and, hence, must be disqualified in the present litigation.

Defendants also allege Canon 5 was violated in that plaintiffs' counsel's decision to accept employment on behalf of Beck and Williams, while concurrently and simultaneously representing Dr. Waxman, the Chief Executive Officer of the institution they were about to sue on an unrelated civil rights violation, constituted representation of adverse interests.

## CANON 4

■ Canon 4 seeks to prevent an attorney who learns a client's secrets within the confines of the attorney-client relationship from later using those secrets against the client by, for example, representing an adverse party. One policy basis for Canon 4 is to encourage clients to fully and completely confide in their attorneys without fear the information will some day be used against them. A lawyer's duty to his client outlasts the period of employment, and courts construe Canon 4 to prohibit disclosures of confidential communications of former clients. *Industrial Parts Distributors, Inc. v. Fram Corp.*, 504 F.Supp. 1194 (D.Kan. 1981).

■ A Canon 4 violation does not occur in every case where a lawyer represents an adversary of a former client, however. The key inquiry which must be made is whether there exists a "substantial relationship" be-

tween the former representation and the subsequent representation. *Cannon v. U.S. Acoustics Corp.,* 398 F.Supp. 209, 222–23 (N.D.Ill.1975), *aff'd. in part* 532 F.2d 118 (7th Cir.1976). The substantial relationship test has been adopted by the Tenth Circuit Court of Appeals. *Redd v. Shell Oil Co.,* 518 F.2d 311 (10th Cir.1975).

■ If there is a "reasonable probability" that client confidences were disclosed in a prior representation which could be used against that client in later adverse representation, the court may presume the substantial relationship between the two cases. *Trone v. Smith,* 621 F.2d 994, 998 (9th Cir. 1980).

In *Industrial Parts, supra,* the court stated, at 1197:

"... To determine whether such a possibility exists, i.e., whether there is a substantial relationship between the two representations, the Court must 'examine the facts, circumstances and legal issues' of the previous representation. *Realco Services, Inc. v. Holt,* 479 F.Supp. [867] at 872."

Hence, the factual context of the two representations must be similar or related for the relationship to be substantial. See *Trone v. Smith, supra.*

■ In accordance with the dictates of *Industrial Parts, supra,* the court has considered the facts, circumstances and legal issues of the previous civil rights action involving employment discrimination of an Assistant Professor in the College of Allied Health. The court finds the possibility that plaintiffs' counsel, as counsel for Dr. Waxman in that action, were privy to the confidences and innermost workings of the methods and patterns of decision-making at the Medical Center as related to the issues in the present actions, too remote to be deemed reasonable or substantial, and thus too remote to warrant disqualification of plaintiffs' counsel in this case.

The court finds there exists no reasonable probability that client confidences were disclosed in the prior representation of Dr. Waxman by plaintiffs' counsel which could be used against the present defendants in the pending litigation.

The court notes that the only evidence which defendants have proffered to substantiate their claim that the former and present causes of action are substantially related is that a similarity exists only as to the *type of action* involved in both cases. The present action involves charges of medical negligence, premises liability, negligent release, *inter alia,* whereas the former action involved employment discrimination.

On these facts, the court is unable to conclude as a matter of law that the representation provided by plaintiffs' counsel in the former action on employment discrimination substantially related to the matters that are the subject of the instant lawsuits. The court finds the movant has not carried his burden of establishing the existence of a substantial relationship between the prior representation and the pending cases; hence, movant has not established that Canon 4 is applicable as a basis for disqualifying plaintiffs' counsel in this action. *Industrial Parts, supra.* In a case such as the one at bar, where the matters in the present representation are totally unrelated to the former representation, no ethical problem exists. *Cannon, supra.*

## CANON 5

■ Defendants argue the simultaneous, now former, representation of Dr. Waxman created an adversity of interests, in violation of Canon 5.

In *Field v. Freedman, supra,* the court noted: "The application of Canon 5, CPR, requires at the outset interests on the part of separate clients which are or may be adverse to one another." *Id.* at 940. Defendants claim that plaintiffs' counsel's representation of Dr. Waxman in a former civil rights action based upon a premise of employment discrimination has created an adversity of interests in the present lawsuit such that disqualification is mandated.

Upon examination of the former lawsuit which revolved solely around an employment decision made by Dr. Strata Norton, Dean of the College of Health Sciences, and

approved by Dr. Waxman, concerning the non-reappointment of a non-tenured Assistant Professor in the School of Allied Health, the court fails to see that any adverse interests were created by the acceptance by Schnider, Shamberg & May, Chartered, of the *Beck* and *Williams* cases.

Although the previous litigation and the pending litigation both involve claims of civil rights violations, the facts in each case involve totally different theories of liability. The dissimilarity of the cases both factually and theoretically cause the court to conclude that no adversity of interests were created upon plaintiffs' counsel's acceptance of employment in the *Beck* and *Williams* cases.

Without an initial finding of adversity of interests, no violation of Canon 5 can occur; thus, this Canon may not serve as a basis for disqualification of plaintiffs' counsel in the present lawsuit.

As the court noted earlier, the Code of Professional Responsibility provides guidance in determining whether an ethical violation has occurred, but the true standard for determining whether such a violation should prevent the continued representation of a client by a particular law firm of his choice is whether the offending attorney's conduct threatens to "taint the underlying trial with a serious ethical violation." *Field v. Freedman, supra,* at 940. The court, having found such conduct not to exist in the case at bar, denies defendants' motion for disqualification of plaintiffs' counsel.

In *Fullmer v. Harper,* 517 F.2d 20 (10th Cir.1975), the Tenth Circuit Court of Appeals mandated the district courts to make findings of fact and conclusions of law in ruling on motions to disqualify opposing counsel. This requirement enables the court on appeal to have a record before it which will permit meaningful review. The parties are cautioned that this court's findings of fact in this Memorandum and Order in no way prejudge any issues in this case, and in no way bind the parties, except as they are used in the Memorandum and Order deciding this motion.

IT IS BY THE COURT THEREFORE ORDERED that defendants' motion to disqualify plaintiffs' counsel is hereby denied. The record before the court does not allow the conclusion that an ethical violation is occurring or is about to occur. IT IS FURTHER ORDERED that plaintiffs' request for oral argument is hereby denied.