James C. **RAMSAY,** Plaintiff,

v.

**BOEING WELFARE BENEFIT PLANS COMMITTEE, et al,** Defendants.

No. 86–1645.

United States District Court, D. Kansas.

July 2, 1987.

John G. McGee, Williamson, McGee, Griggs & DeMoss, Wichita, Kan., for plaintiff.

Larry A. Withers, Kahrs, Nelson, Fanning Hite & Kellog, Charles P. Efflandt, Foulston Siefkin, Powers & Eberhardt, Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case is before the court on motion of defendant Boeing Military Airplane Company (BMAC) and defendant Boeing Welfare Benefit Plans Committee (Committee), to disqualify Andrea Ramsay, John F. McGee and the law firm of Williamson, McGee, Griggs and DeMoss from further representation of plaintiff. Defendant Aetna Life Insurance Company has joined in this motion. The parties agree that Andrea Ramsay is plaintiff's wife, is an associate in the firm of Williamson, McGee, Griggs and DeMoss, will likely be called as a witness on behalf of plaintiff at trial, and may testify to material facts.

In this case, plaintiff is claiming wrongful termination of employment and group medical plan benefits as well as defendant's failure to comply with requests for benefit information, all in alleged violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* Plaintiff additionally asserts tort claims of fraud, conspiracy and intentional interference with contract, all based on the same factual allegations as the ERISA claims.

Andrea Ramsay admits that she had conversations with representatives of BMAC and the Committee after plaintiff's termination in which she tried to determine the reason for the termination, and requested a reconsideration and reinstatement of his status as a member of the group medical plan. She communicated with these defendants by telephone and in writing using whatever stationery was then available to her, including letterheads of a firm with which she was then employed and later her own letterhead as an attorney.

Defendant's motion for disqualification is based upon Disciplinary Rule 5–102(A), adopted by the Kansas Supreme Court as Rule No. 225. *See* Kan.Stat.Ann., Ch. 20, art. 31 (1985 Supp.); 235 Kan. cxxvii-cliv. This rule is made applicable to attorneys practicing before this court by Local Rule 4a, IV, b. It is appropriate for this court to disqualify an attorney for good cause shown as part of its general supervisory authority over lawyers and litigation before it. *See* Local Rule 4a; *United States v. Springer,* 460 F.2d 1344, 1354 (7th Cir. 1972); *Smith v. New Orleans Federal Sav. & Loan Ass'n,* 474 F.Supp. 742 (E.D.La. 1979). As stated in *Field v. Freedman,* 527 F.Supp. 935, 940 (D.Kan.1981):

> Disqualification of an attorney chosen by a party to represent him in a lawsuit is a serious matter. Courts have the inherent power to disqualify counsel where necessary to preserve the integrity of the adversary process.... How-

ever, each case must be decided on its own peculiar facts. *United States v. Standard Oil Co.*, 136 F.Supp. 345 (S.D. N.Y.1955).

The immediate preventive measure sought by plaintiff is indicated only where the offending attorney's conduct threatens to "taint the underlying trial" with a serious ethical violation. *W.T. Grant Co. v. Haines*, 531 F.2d 671 (2nd Cir.1976). There are, in this Court, in the state of Kansas, and in every other state, detailed and pervasive rules and enforcement machinery to deal with ethical violations.

Where the threat of tainting the trial does not exist, the litigation should proceed, the remedy for unethical conduct lying in the disciplinary machinery of the state and federal bar. *See Bottaro v. Hatton Assoc.*, 680 F.2d 895 (2d Cir.1982). The court is also mindful that a person's right to select his own counsel, although not an absolute right, may be overridden only where compelling reasons exist. *See* 28 U.S.C. § 1654; *Bottaro*, 680 F.2d at 897. *In re American Cable Publications, Inc.*, 768 F.2d 1194, 1196 (10th Cir.1985).

Disciplinary Rule 5–102(A) states, with exceptions not relevant to this motion:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial ...

The literal language of this rule, as applied to the facts of the present case would appear to compel the withdrawal of Mr. McGee and his firm, because Mr. McGee knows that Andrea Ramsay, a lawyer in his firm, ought to be called as a witness on behalf of plaintiff. However, the Tenth Circuit has rejected a literal reading of this rule, *see American Cable, supra*, at 1195, and this district has uniformly applied the rule according to the "attending facts" in each case. *See, e.g., F.D.I.C. v. Frazier*, 637 F.Supp. 77, 81 (D.Kan.1986); *Field,*

*supra*, at 942. As held in *Field, supra* at 942:

> Disciplinary Rule 5–102 is not a rule to be applied per se according to its terms, but rather it is a rule which should be applied according to the "attending facts" in each case. *Greenebaum-Mountain Mtg. v. Pioneer Nat. Title Ins. Co.*, 421 F.Supp. 1348, 1352 (D.Colo. 1976). The critical question is not whether or not a lawyer will be called as a witness, but whether the litigation can be conducted in fairness to all if the attorney is a witness. An attorney should not be disqualified unless the ethical problem posed by his role as a witness taints with misconduct the trial and the underlying adversary process. An entire law firm need not be disqualified simply because one member of that firm will be a witness on a material fact. *Id.* at 1353, 1354.

In the present case, Andrea Ramsay's role will be confined to testifying as a witness and she will not play any role as advocate for plaintiff. Although it is difficult to ascertain whether Ms. Ramsay learned of the facts to which she will testify in her capacity as a spouse to the plaintiff, rather than in her capacity as an attorney, it appears that most, if not all of such facts were obtained by her prior to her association with the Williamson, McGee, Griggs and DeMoss firm. Her interest in the outcome of the litigation will be clear to the trier of fact by virtue of her spousal relationship to the plaintiff. Any perception by the public that she has twisted the truth would surely be attributed to her role as an interested spouse, and not to her profession as a lawyer. Additionally, nothing in the record indicates that Mr. McGee or other lawyers in the Williamson, McGee, Griggs and DeMoss firm will be witnesses, and they shall only serve as advocates.

Were Ms. Ramsay the litigant, instead of the litigant's wife, Mr. McGee's representation would be immune to challenge. *See American Cable, supra* at 1196. No cases cited to this court or revealed by independent research appear factually analogous. However, the American Bar Association's Model Rules of Professional Conduct make

clear that the lawyer-as-witness disciplinary rules would not preclude Mr. McGee and his firm from continued representation of plaintiff. Rule 3.7(b) provides that,

"A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 [pertaining to conflict of interest with present clients] or Rule 1.9 [pertaining to conflicts with former clients]." *See* 52 U.S.L.W. 19 (Aug. 16, 1983).

*See American Cable, supra* at 1196 n. 2.

The court is convinced that defendant has not sustained its burden to show that Andrea Ramsay's testimony will in some manner taint the trial or the legal system. *See Greenebaum-Mountain Mtg., supra,* at 1353–54. Defendant has shown no prejudice to itself nor any other reason why the trial cannot be conducted in fairness to all if Ms. Ramsay testifies. *See Greenebaum, supra,* at 1354 (main purpose of Canon 5 is to avoid prejudice at trial). As stated in *American Cable, supra* at 1196:

The rules prevent situations in which others might think the lawyer, as witness, is distorting the truth for his client or is enhancing his own credibility as advocate by virtue of having taken an oath as witness, as well as the uneasy situation that arises when an opposing counsel must impeach on cross-examination another lawyer-adversary. *Id.*

The rationale behind Canon 5, as applied to the facts of this litigation, does not persuade the court that disqualification of Mr. McGee and the firm of Williamson, McGee, Griggs and DeMoss is required.

The court finds no factual support for defendant's claim that Disciplinary Rule 5–102(B) compels disqualification, and declines to embrace defendant's "appearance of impropriety" argument under Disciplinary Rule 9–101. Nor does the court find it necessary to determine whether Andrea Ramsay has or has not acted as one of the counsel of record for plaintiff in light her assurance to this court that she is not representing plaintiff in this action and will not be involved in any trial of this matter as an attorney. (Dk. # 35, p. 3.)

IT IS THEREFORE ORDERED that defendant's motion for disqualification of plaintiff's counsel is granted to the extent that Andrea Ramsay shall not participate as an attorney in the practice of her profession in the future course of this litigation.

IT IS FURTHER ORDERED that defendant's motion for disqualification of plaintiff's counsel is denied to the extent that it seeks to disqualify John F. McGee and the law firm of Williamson, McGee, Griggs and DeMoss from further participation in this lawsuit.