916 P.2d 836

**Bill CHAPPELL, Jr. and Los Poblanos Development Corporation, Petitioners,**

v.

**Honorable Burt COSGROVE, Respondent,**

and

**Thomas Village Neighborhood Association, Roberta Miller Baca, and George R. ("Pat") Bryan, III, Real Parties in Interest.**

**No. 23378.**

Supreme Court of New Mexico.

May 1, 1996.

Chappell & Barlow, P.A., Frances C. Bassett, James R.W. Braun, Albuquerque, for Petitioners.

Tom Udall, Attorney General, Santa Fe, for Respondent.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Patrick J. Rogers, Albuquerque, for Real Parties in Interest.

## OPINION

RANSOM, Justice.

1. Bill Chappell, Jr., an attorney with the law firm of Chappell & Barlow, P.A., petitioned this Court for a writ of prohibition or, in the alternative, a writ of superintending control vacating a district court order entered pursuant to SCRA 1986, 16–307 (Repl. Pamp.1995) (lawyer as witness), disqualifying Chappell from acting as counsel for Los Poblanos Development Corporation in a breach of contract suit brought against Los Poblanos by the Thomas Village Neighborhood Associ-

ation. Chappell also sought relief from that part of the order entered pursuant to SCRA 1986, 11–615 (Repl.Pamp.1994) (exclusion of witnesses), which prohibits him from speaking with witnesses or potential witnesses about their testimony, appearing at depositions, or reviewing factual testimony in the Neighborhood Association's suit. Following a hearing on February 14, 1996, we issued our writ vacating Chappell's disqualification and prohibiting the trial court from ordering a similar disqualification pending this written opinion.

2. *Facts and proceedings.* In the underlying suit that gave rise to the disqualification order, the Neighborhood Association claimed Los Poblanos breached a promise to build a fully landscaped park as part of a planned residential subdivision within the Thomas Village development. This promise allegedly was made at a meeting between representatives of the Neighborhood Association and attorneys for Los Poblanos on November 5, 1992. Chappell, then with the law firm of Montgomery & Andrews, P.A., was among five persons who attended this meeting, and, according to the affidavit testimony of Pat Bryan, a resident of Thomas Village who represented the Neighborhood Association at the meeting, Chappell "took an active role in the discussions [and] negotiations" which gave rise to the alleged promise.

3. On November 6, 1992, counsel for Los Poblanos drafted a letter recounting the discussions that had taken place the previous day. This letter appeared on Montgomery & Andrews letterhead and was signed by Charles Seibert, an attorney representing Los Poblanos at the November 5 meeting. Chappell's name does not appear anywhere in the letter, but Chappell does acknowledge that he read it. Bryan, referring to the letter in his affidavit, testified that "Chappell and ... Seibert ... led TVNA to believe and specifically told TVNA that their promise to build a park was a promise upon which TVNA and individual members 'could rely'."

4. When this suit was filed, the Neighborhood Association indicated to Chappell that if he or any member of his current firm entered an appearance on behalf of Los Poblanos, then the Neighborhood Association

would seek a disqualification order. Chappell did enter an appearance and filed a motion to dismiss the Neighborhood Association's complaint. Thereafter, the Neighborhood Association moved to disqualify Chappell and the law firm of Chappell & Barlow, P.A., arguing that Chappell could not under SCRA 16–307 attack "his own written documents and previous oral representations that form the basis of [Los Poblanos's] promise."

5. The district court heard the disqualification motion on October 20, 1995. The evidence before the court consisted of three affidavits—one by Bryan, one by Chappell, and one by Greg Anixter, the president of Los Poblanos. In his affidavit Bryan testified that Chappell and Seibert negotiated with the Neighborhood Association on behalf of Los Poblanos, that Chappell "took an active role in the ... development of the parameters of [Los Poblanos's] promise to construct a park," and that Chappell, acting as an agent of Los Poblanos, "conveyed and intended to convey a promise that [Los Poblanos] would build a park." In his own affidavit, Chappell testified that the November 5 meeting was the only discussion he attended between the Neighborhood Association and Los Poblanos, that he does not recall what was said or agreed to at the meeting regarding a park, but that he had read Seibert's November 6 letter and "assumed that the mention of the park correctly reflected the discussions which had transpired to that date regarding the park." Finally, Anixter testified that Los Poblanos was represented by Seibert and Los Poblanos shareholder Ralph Stone at all meetings between the Neighborhood Association and Los Poblanos, that Chappell attended only the November 5 meeting, and that Los Poblanos does "not wish to be represented by anyone other than ... Chappell." Based on this record, and without specifying its reasons for so ruling, the trial court granted the disqualification motion.

6. *Propriety of extraordinary relief.* The Neighborhood Association has argued that this Court ought not grant the relief requested because Chappell has not demonstrated a sufficient basis upon which we can grant the extraordinary relief of prohibition or superintending control. We agree with the Neighborhood Association that matters entrusted to the trial court's discretion ordinarily are not matters over which this Court should exercise its jurisdiction to grant extraordinary relief. We acknowledge as well that neither the writ of prohibition nor the writ of superintending control should be used as a substitute for a decision on direct or interlocutory appeal. However, in this particular case we are faced with an issue of first impression. Whether the trial court had discretion to order Chappell's disqualification and, if so, within what boundaries the court was entitled to exercise its discretion are questions without clear answers under New Mexico law. Further, the relief available on direct appeal appears wholly inadequate because the matter may be resolved without a final judgment or appealable order and, in any event, Los Poblanos would have been forced to go through litigation without the benefit of its counsel of choice. Further, in the event of an appeal, judicial economy likely would weigh against remanding for a new trial. Under these conditions we issued our writ.

7. *Materiality, necessity, and potential prejudice is the standard for disqualification under Rule 16–307.* Los Poblanos argues that it has a right to representation by an attorney of its own choosing. *See In re American Cable Publications, Inc.,* 768 F.2d 1194, 1196 (10th Cir.1985) (noting that "[a] corollary to [the right to counsel contained in 28 U.S.C. § 1654 (1994)] is the right of representation by counsel of [one's own] choosing"). Further, Los Poblanos argues that its choice should be disturbed only for compelling reasons. *See, e.g., Ramsay v. Boeing Welfare Benefit Plans Comm.,* 662 F.Supp. 968, 970 (D.Kan.1987) ("The court is also mindful that a person's right to select his own counsel, although not an absolute right, may be overridden only where compelling reasons exist."). Stressing the importance of its protected interest in counsel of choice, Los Poblanos asks us to adopt a standard under which an attorney may be disqualified pursuant to Rule 16–307 only upon an affirmative showing that his or her testimony is material, necessary, and potentially prejudicial to the client's case.

8. Disqualification of counsel under the attorney-witness rule formerly was governed by Model Code of Professional Responsibility DR 5–102 (1980), codified in New Mexico as Code of Professional Responsibility Rule 5–102 (Repl.Pamp.1985). Under that rule an attorney could be disqualified from representing a client when "it [was] obvious that he [or she] ... ought to be called as a witness." DR 5–102(A). Many courts and commentators noted that this standard was ambiguous and lead to various abuses, including "use as a tactical measure to disrupt an opposing party's preparation for trial." *Cannon Airways v. Franklin Holdings Corp.*, 669 F.Supp. 96, 100 (D.Del.1987); *see also Kalmanovitz v. G. Heileman Brewing Co.*, 610 F.Supp. 1319, 1323 (D.Del.1985) (noting that "motions to disqualify are often disguised attempts to divest opposing parties of their counsel of choice"); *Cottonwood Estates, Inc. v. Paradise Builders, Inc.*, 128 Ariz. 99, 624 P.2d 296, 302 (1981) ("By misusing the advocate-witness prohibition, an attorney might elbow opposing counsel out of the litigation for tactical reasons."). The American Bar Association responded to these abuses by adopting Model Rule of Professional Conduct 3.7, which we have substantially adopted in New Mexico, *see* SCRA 1986, 16–307 (Repl.Pamp.1995).

9. In *Cottonwood Estates* the Arizona Supreme Court considered en banc whether a trial court abused its discretion by ruling that the attorney for a developer could not represent his client in a breach of contract action brought by a builder. 624 P.2d at 298. In addition to acting as counsel, this attorney had served as a corporate officer of the developer during times relevant to the contract action, and in that capacity he allegedly made a fraudulent conveyance of a portion of the developer's land holdings to protect those holdings from any adverse judgment. *Id.* The court held that

> [w]hen an attorney is to be called other than on behalf of his client, a motion for disqualification must be supported by a showing that the attorney will give evidence material to the determination of the issues being litigated, that the evidence is *unobtainable elsewhere*, and that the testi-

mony is or may be prejudicial to the testifying attorney's client.

*Id.* at 302 (emphasis added). Applying this standard, the court ruled that the attorney properly was disqualified because his testimony would be prejudicial and because testimony as to his state of mind would be both relevant to the claimed fraudulent actions and unobtainable elsewhere. *Id.* (observing that "[w]hat he did as officer and *why* he did it are both material to the determination of this action" (emphasis added)).

10. By contrast, in *Smithson v. United States Fidelity & Guaranty Co.*, 186 W.Va. 195, 411 S.E.2d 850 (1991), West Virginia's highest court concluded that an attorney for an insured was not disqualified under its version of Disciplinary Rule 5–102. In that case an insurance company moved to disqualify the insured's counsel in a suit for bad faith failure to settle on the ground that his testimony was necessary to prove that "part of the delay in settling [the insured's] claim was the [insured's] attorney's fault." *Id.* at 201, 411 S.E.2d at 856. Prior to ruling on the merits, the court adopted the following standard:

> First, it must be shown that the attorney will give evidence material to the determination of the issues being litigated; second, the evidence cannot be obtained elsewhere; and, third, the testimony is prejudicial or potentially prejudicial to the testifying attorney's client.

*Id.* The court reasoned that such a standard "strikes a reasonable balance between the potential for abuse and those instances where the attorney's testimony may be truly necessary to the opposing party's case." *Id.* Ultimately the court ruled that disqualification was not proper because the insurance company had not shown that the desired testimony could not have been developed by other witnesses, noting that employees who had participated in the appraisal process could have testified about the delay allegedly caused by the insured's attorney. *Id.*

11. Similarly, in *LeaseAmerica Corp. v. Stewart*, 19 Kan.App.2d 740, 876 P.2d 184 (1994), the Kansas Court of Appeals, citing with approval the standard adopted in *Smithson*, held that disqualification of an

attorney for LeaseAmerica was improper in a suit by it to recover a deficiency balance and accrued interest on motor homes it had leased to another corporation. The guarantor of the leases, having raised as a defense that LeaseAmerica had not disposed of the motor homes in a commercially reasonable manner, had moved to disqualify counsel for LeaseAmerica whom the guarantor intended to examine about the contents of letters the attorney had written to the guarantor's attorney. The court concluded that the guarantor had failed to demonstrate the necessity of the attorney's testimony, noting that mere speculation that witnesses for LeaseAmerica *might* testify at trial in a manner inconsistent with statements made by the attorney in his letters was an insufficient basis for disqualification. *Id.,* 876 P.2d at 193.

12. *Holding.* Under Rule 16–307(A), "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness." This rule recognizes the correlative interest of an adverse party in adducing essential proofs that are not available except through testimony of the client's attorney. Los Poblanos argues, however, that because there are four individuals in addition to Chappell who can attest to what was said, done, and agreed to at the November 5 meeting, Chappell is not a "necessary witness" within the meaning of Rule 16–307. We agree.

■ 13. In transactional matters the attorney frequently is a witness to events that result in litigation, but that fact says little about the necessity of the attorney's testimony as a witness at trial. It is this *necessity* that the party seeking disqualification has the burden of establishing. We hold that an attorney may not be disqualified under Rule 16–307 absent a showing by the party seeking disqualification that the attorney's testimony is material to an issue in the case, that the evidence to be elicited from the attorney's testimony is not available from another source, and that the attorney's testimony is potentially prejudicial to his client's case. Ordinarily threshold discovery will be necessary to establish these elements.

■ 14. *Conclusion.* On this record Chappell is not a necessary witness under

the standard we adopt today, and he is not disqualified from representing Los Poblanos. At this juncture, it appears that any testimony by Chappell would be merely cumulative. *Cf. Smithson,* 186 W.Va. at 201, 411 S.E.2d at 856 (attorney not necessary witness when employees of insurer and insurer's former attorney also witnessed the events about which attorney's testimony was sought). It was, therefore, improper to disqualify Chappell. Because we hold that disqualification was improper, the trial court's ruling that Chappell would be prohibited from speaking with other witnesses, attending depositions, and reviewing testimony is moot, and we do not address it. Our silence, however, should not be construed as indicating our opinion on the propriety of this ruling.

15. Having here enunciated for the first time the standard for assessing the merits of a disqualification motion under Rule 16–307, we remand this case to the trial court for further proceedings. Should further discovery uncover facts supporting the Neighborhood Association's claim that Chappell is a necessary witness, the Neighborhood Association may renew its motion to disqualify and the trial court may rule thereon according to the standard adopted in this opinion.

16. **IT IS SO ORDERED.**

BACA and MINZNER, JJ., concur.