# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-002

Filing Date: December 6, 2012

Docket No. 33,830

ROY D. MERCER, LLC,

       Petitioner,

v.

HONORABLE MATTHEW G. REYNOLDS,
District Court Judge For The Seventh
Judicial District Court,

       Respondent,

and

GANDY DANCER, LLC,

       Real Party in Interest,

and

BNSF RAILWAY COMPANY,

       Plaintiff/Counter-Defendant.

ORIGINAL PROCEEDING

Law & Resource Planning Associates, P.C.
Charles Thomas DuMars
Tanya L. Scott
Albuquerque, NM

for Petitioner

Gary K. King, Attorney General
Scott Fuqua, Assistant Attorney General
Santa Fe, NM

1

for Respondent

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Charles J. Vigil
Albuquerque, NM

Riley, Shane & Keller, P.C.
Mark J. Riley
Albuquerque, NM

for Real Party in Interest

Butt, Thornton & Baehr, P.C.
Emily A. Franke
Rodney L. Schlagel
Albuquerque, NM

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Paul T. Halajian
Albuquerque, NM

for Plaintiff Counter-Defendant

**OPINION**

**BOSSON, Justice.**

{1}    In the practice of law, there is no higher duty than one's loyalty to a client. This duty applies to current and former clients alike. In this case, we are called upon to interpret this duty in light of Rule 16-110(C) NMRA of the Rules of Professional Conduct regarding the imputation of conflicts of interest to law firms. In interpreting and applying the rule to this case, we hold that when an attorney has played a substantial role on one side of a lawsuit and subsequently joins a law firm on the opposing side of that lawsuit, both the lawyer *and the new firm* are disqualified from any further representation, absent informed consent of the former client. We also specifically conclude under the same rule that screening the new attorney from any involvement in the lawsuit is *not* an adequate response to the conflict.

**BACKGROUND**

{2}    The underlying case in this matter concerns a property dispute between BNSF Railway (BNSF) and Roy D. Mercer, LLC (Mercer). The case centers on the interpretation of an easement. BNSF constructed large berms, dykes, and channels both on and off Mercer's property designed to divert water away from BNSF's railroad tracks and through Mercer's property. BNSF claimed a right to do so pursuant to a 1936 easement granted to

2

BNSF's predecessor in interest by Mercer's predecessor in interest. BNSF hired a firm, Gandy Dancer, LLC (Gandy Dancer), to construct the new berms, dykes, and channel.

{3} Mercer objected and threatened to remove the earthwork dykes and berms installed by Gandy Dancer so as to return the property to its natural state. Relying upon its claim of an easement, BNSF filed suit in state court against Mercer on June 3, 2008, seeking to enjoin Mercer from removing the earthworks and requesting damages. Mercer filed a counterclaim against BNSF for tort damages and inverse condemnation. Mercer also joined Gandy Dancer as a party defendant for trespass, negligence, and prima facie tort.

{4} Once joined as a party, Gandy Dancer, through its attorneys Riley, Shane & Keller, P.C. (Riley Law Firm), removed the matter to federal court, alleging federal question jurisdiction. Upon removal, Mercer hired the Wagner Ford Law Firm. At that time, the Law Firm consisted of attorneys Kenneth Wagner and Lisa Ford. Although the Law Firm was named Wagner Ford Law Firm, Ford was apparently only an associate. The original scope of legal work was limited to securing a remand of Mercer's counterclaims to state court. However, the engagement letter left open the possibility of the Wagner Ford Law Firm assisting further in the state case if it was remanded. Both attorneys Wagner and Ford actively represented Mercer in the federal court proceeding, each entering separate entries of appearance on behalf of Mercer. The Riley Law Firm represented Gandy Dancer throughout all of the proceedings.

{5} The federal court ultimately granted Mercer's motion to remand to state court. Mercer's billing records indicate that Ford continued to be actively involved in the case on Mercer's behalf. While she never entered an appearance in the state court proceedings, Ford was involved in strategy meetings with Mercer and co-counsel and was active in investigative efforts, discovery, and communication with experts, and also attended court hearings on Mercer's behalf. As one of Mercer's attorneys, Ford was privy to all strategy and case management decisions, as well as privileged communications from her client.

{6} In January 2010, Mercer added another law firm, Law & Resource Planning Associates, P.C. (the LRPA Law Firm) to represent it in the state court proceeding because of water law issues involved in that case. The Wagner Ford Law Firm ceased representing Mercer in late 2010. In addition, Ford also left the Wagner Ford Law Firm in December 2010.

{7} In late June 2012, while the state court proceeding was ongoing, the LRPA law firm learned via the Riley firm's website that the Riley firm had hired Ford as a new associate. LRPA promptly sent a letter to Mark Riley of the Riley firm raising Ford's conflict of interest and stating that the Riley firm could no longer represent Gandy Dancer in the litigation with Mercer, Ford's former client. The Riley firm then sent a letter to Kerwin Hollowwa, corporate counsel for Mercer, notifying him that Ford would be joining the Riley firm "effective July 2, 2012." The letter also described the steps the Riley firm would take to screen Ford from any involvement in the Mercer case. In responding to the LRPA letter,

3

the Riley firm attached a copy of its letter to Mr. Hollowwa, stating that the attached letter should "address any concerns you may have regarding a conflict of interest in connection with the Roy D. Mercer, LLC v. Gandy Dancer matter." LRPA replied that it continued to have concerns about Riley's representation of Gandy Dancer and that Mercer would not waive the conflict of interest.

**{8}**     The Riley firm then filed a motion in the state case seeking judicial approval of a Rule 16-110(C) screening process for Ford that Riley believed would allow its continued representation of Gandy Dancer. The Riley firm asserted that it had timely put in place a screening process that would shield Ford from any involvement in the Mercer-Gandy Dancer litigation and would protect any confidential information that Ford may have accumulated during her prior representation of Mercer. Riley also argued that Ford had not played a substantial role in the state court case, claiming that her previous involvement was limited to the remand of the federal court case. Riley pointed out that Ford had not entered an appearance on behalf of Mercer in the state court case and had no decision-making authority.

**{9}**     Mercer filed a response to Gandy Dancer's screening motion and also filed a cross-motion to disqualify the Riley firm. Mercer pointed to billing records showing that Ford had attended meetings to formulate strategy in both the state and federal cases.

**{10}**     After full briefing on the competing motions, oral argument, and supplemental briefing, the district court issued an Order and a Memorandum Decision. The court found that Ford had previously represented Mercer in the same or a substantially similar matter, her role was substantial, and therefore she had a conflict of interest under Rule 16-109(A) NMRA that would prevent her from acting as attorney for Gandy Dancer. The court found that Ford had information protected by Rules 16-106 and 16-109 NMRA that was material to the present litigation and that such information was neither peripheral or tenuous. The court also found that Mercer had not waived the conflict. On the basis of these findings, the district court found that the Riley firm had violated Rule 16-110(C) when it hired Ford while still representing Gandy Dancer.

**{11}**     Nevertheless, the district court found that the equities favored Gandy Dancer and declined to disqualify the Riley firm. The court reasoned that Gandy Dancer was an innocent bystander and would be severely harmed if it had to hire substitute counsel given an imminent trial date. The court found that Mercer's interest was protected by the Riley firm's screening process, which kept Ford segregated from the litigation and protected confidential information. The court concluded that Mercer should file a complaint with the Disciplinary Board against the Riley firm. The court also ordered the Riley firm to pay Mercer's attorneys' fees incurred in bringing the conflict issue before the court.

**{12}**     Mercer then filed a petition for writ of superintending control with this Court. We held oral argument on October 10, 2012 and issued a writ from the bench prohibiting the Riley firm's continued representation of Gandy Dancer due to its continuing conflict of interest. We now issue this opinion to further explain our decision.

4

**DISCUSSION**

**Standard of Review**

**{13}**     A ruling on a motion to disqualify is generally reviewed for an abuse of discretion. *State v. Barnett*, 1998-NMCA-105, ¶ 13, 125 N.M. 739, 965 P.2d 323.

**Necessity of Writ**

**{14}**     The ability of a lawyer to change sides in a lawsuit is unquestionably an issue of "great public importance." *See State ex rel. Schwartz v. Kennedy*, 120 N.M. 619, 624, 904 P.2d 1044, 1049 (1995) (this Court may exercise its power of superintending control "even when there is a remedy by appeal, where it is deemed to be in the public interest to settle the question involved at the earliest moment." (internal quotation marks and citations omitted)). This case impacts the inviolate relationship of attorney and client and, equally important, the public perception of that relationship and the legal profession.  Clients must be secure in their understanding that attorneys will maintain their confidences, even after the termination of an attorney-client  relationship.  This expectation is put in jeopardy when an attorney switches sides in a lawsuit, no matter what procedures may be put in place to minimize the risk of breached confidences.  The perception of divided loyalties remains the same.

**{15}**     This case presents an issue of first impression in New Mexico.  Rule 16-110(C) was amended in 2008.  It is this Court's responsibility to interpret and apply the Rules of Professional Conduct that govern the legal profession.  *See* N.M. Const. art. VI, § 3 (vesting the Court with "superintending control over all inferior courts"); NMSA 1978, § 36-2-1 (1941) (vesting the Court with the responsibility of promulgating rules that "define and regulate the practice of law within the state of New Mexico"); *In re Treinen*, 2006-NMSC-013, ¶ 6, 139 N.M. 318, 131 P.3d 1282 (recognizing that the Supreme Court's constitutional power of superintending control carries with it the inherent power to regulate all pleadings, practice, and procedure affecting the judicial branch of government); *State ex rel. Anaya v. McBride*, 88 N.M. 244, 246, 539 P.2d 1006, 1008 (1975).  Therefore, we take this opportunity to clarify and reinforce the provisions of our Rules of Professional Conduct.

**The Law of Imputation and Disqualification in New Mexico**

**{16}**     A lawyer must demonstrate undivided loyalty to a client.  *State v. Almanza*, 1996-NMCA-013, ¶ 4, 121 N.M. 300, 910 P.2d 934.  When an attorney leaves one law firm and joins another, the attorney continues to owe a duty of confidentiality and undivided loyalty to his or her clients.  *Id.  See* Rule 16-109(C)(2) ("A lawyer who has formerly represented a client in a matter . . . shall not thereafter . . . reveal information relating to the representation . . . .").  Therefore, associates who change law firms carry with them the potential of a conflict of interest that attaches not only to the attorney personally but also to the new firm.  A firm hiring a new associate has a duty to identify any such conflicts before consummating the hiring process.

5

**{17}**   Rule 16-110(C) reads as follows:

> **Subsequent firm associations; screening.**   When a lawyer becomes associated with a firm, *the firm* may not knowingly represent a person in a matter in which that [newly associated] lawyer is disqualified under Paragraph A or B of Rule 16-109 NMRA of the Rules of Professional Conduct unless:
>
>     (1)      the newly associated lawyer has no information protected by Rule 16-106 or 16-109 NMRA of the Rules of Professional Conduct that is material to the matter; or
>
>     (2)      the newly associated lawyer did not have a substantial role in the matter, is timely screened from any participation in the matter *and* is apportioned no part of the fee therefrom, and written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this rule.

(Emphasis added.)  In practice, Rule 16-110(C) means that when a law firm hires a new associate, any conflict the associate would have individually, is imputed to the entire firm. This is because "a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client." Rule 16-110 cmt. 2.  Therefore, "each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." *Id.*  Of course, for a new associate's conflict of interest to be imputed to the hiring firm under Rule 16-110(C), the new associate must first have a conflict of interest as defined in Rule 16-109 that would prevent him or her from representing the other side.

**{18}**   Rule 16-109(A) states:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a *substantially related* matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(Emphasis added.)  In other words, a lawyer may not represent a client in a matter in which the current client's interests are "materially adverse" to the interests of a former client. Lawyers have a continuing duty to preserve the confidentiality of information about former clients.  "[T]he client previously represented by the former firm must be reasonably assured that the principle of loyalty to the client is not compromised" when an attorney moves to a new firm. *Id.* cmt. 4.  To determine whether an attorney's former representation of an opposing party is "substantially related" to the present litigation, courts look at the scope of the prior legal representation and determine whether it is reasonable to presume that the lawyer would have received confidential information relevant to issues raised in the

6

litigation pending against the former client. *Leon, Ltd. v. Carver*, 104 N.M. 29, 31, 715 P.2d 1080, 1082 (1986).

**{19}** Importantly, once there is (a) a conflict, which is (b) imputed to the new law firm, then disqualification under Rule 16-110(C) is mandatory. The rule states: "When a lawyer becomes associated with a firm, the firm *may not* knowingly represent a person in a matter in which that lawyer is disqualified under Paragraph A or B of Rule 16-109 . . . ." *Id.* (emphasis added). As stated previously, there are two exceptions. The first exception is for situations in which "the newly associated lawyer has no information protected by Rule 16-106 or 16-109 . . . that is material to the matter." Rule 16-110(C)(1). In other words, a firm may continue to represent a current client if the newly-hired associate does not possess confidential information from a former client that is material to the current client's case.

**{20}** In practice, it is highly unlikely that a new associate who is disqualified under Rule 16-109(A) would not possess confidential client information material to the current client's case. Therefore, most of the analysis of Rule 16-110(C) turns on the second exception: "the newly associated lawyer did not have a *substantial role* in the matter [and] is timely screened from any participation in the matter . . . ." Rule 16-110(C)(2) (emphasis added). "Substantial" means "to [a] degree or extent [that] denotes a material matter of clear and weighty importance." Rule 16-100(L) NMRA. In other words, a firm may continue to represent a current client, if the newly-hired associate had only limited or peripheral involvement in the matter, *and* an effective screening process is in place. Importantly, screening can only avoid the firm's disqualification if the disqualified associate played no "substantial role" in the matter before changing firms. Rule 16-110(C)(2). If that is the case, "imputation is removed, and consent to the new representation is not required." Rule 16-110 comm. cmt. 6. If the earlier role was substantial, however, then under Rule 16-110(C)(2) the new firm is disqualified, no screening device can cure the imputed conflict.

**{21}** This Court amended Rule 16-110 in 2008 in response to proposed changes to the ABA Model Rules of Professional Conduct. Previously, Rule 16-110 provided no exceptions to disqualification. *See* Rule 16-110(B) (2007). The 2008 amendments added the two exceptions discussed above. New Mexico's imputation rule differs significantly from the ABA Model Rule. The ABA Model Rule allows screening to remove a conflict as long as it is done timely and former clients are given notice. *See* Model Rules of Prof'l Conduct R. 1.10(a)(2) (2009). New Mexico's rule is more stringent than the ABA Model Rule in that screening is only permitted if the attorney did not play a substantial role in the matter or does not possess confidential information. It follows that this Court's decision to modify the ABA Model Rule reflects a conscious policy choice to limit the instances in which screening can be used to remove a conflict.

**{22}** New Mexico is not the only state to take such an approach. Arizona, Colorado, Massachusetts, Nevada, and Ohio have all adopted similar rules. *See* Ariz. E. R. 1.10(d) ("When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified . . . unless: (1)

the matter does not involve a proceeding before a tribunal in which the personally disqualified lawyer had a substantial role; (2) the personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom . . . ."); Colo. RPC 1.10(e) ("When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified . . . unless: (1) the matter is not one in which the personally disqualified lawyer substantially participated; (2) the personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom . . . ."); Mass. R. of Prof'l Conduct 1.10(d) ("When a lawyer becomes associated with a firm, the firm may not undertake to or continue to represent a person in a matter that the firm knows or reasonably should know is the same or substantially related to a matter in which the newly associated lawyer . . . had previously represented a client whose interests are materially adverse to that person unless: (1) the personally disqualified lawyer has no information protected by Rule 1.6 or 1.9 that is material to the matter . . . ; or (2) the personally disqualified lawyer (i) had neither substantial involvement nor substantial material information relating to the matter and (ii) is screened from any participation in the matter . . . ."); Nev. RPC 1.10(e) ("When a lawyer becomes associated with a firm, no lawyer associated in the firm shall knowingly represent a person in a matter in which that lawyer is disqualified . . . : (1) The personally disqualified lawyer did not have a substantial role in or primary responsibility for the matter that causes the disqualification under Rule 1.9; (2) The personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom . . . ."); Ohio RPC 1.10(c) ("When a lawyer has had *substantial* responsibility in a matter for a former client and becomes associated with a new *firm*, no lawyer in the new *firm* shall *knowingly* represent, in the same matter, a person whose interests are materially adverse to the interests of the former client.").

**The District Court's Factual Findings**

**{23}**     "[T]he burden of establishing that counsel should be disqualified lies with the party seeking disqualification." *Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 39, 127 N.M. 282, 980 P.2d 65. The district court found, and the record supports, that Mercer met this burden. Gandy Dancer does not challenge the majority of the district court's findings. In fact, the majority of its brief is spent supporting the district court's conclusion that its screening process was sufficient to remove Ford's conflict of interest, a point which, as discussed above, is incorrect as a matter of law once the court finds that the new associate played a "substantial role" in the litigation on the other side.

**{24}**     Nevertheless, Gandy Dancer continues to insist that Ford did not play a substantial role in the BNSF litigation while working on the other side. Although the district court was not asked to hold an evidentiary hearing, it did entertain extensive argument of counsel as well as supplemental briefing, after which the court determined that Ford's role representing Mercer was in fact substantial. *See Mascarenas v. Jaramillo*, 111 N.M. 410, 412, 806 P.2d 59, 61 (1991) ("Our duty is to interpret the findings made to determine whether they are sufficient to support the judgment entered thereon."). While it is not our practice on an

8

extraordinary writ to entertain substantial evidence challenges, we believe it is important to explain the evidence that supported the district's court's "substantial role" determination, as it is foreseeable that similar situations may occur in the future.

**{25}** As a preliminary matter, the district court found that Ford played a substantial role "in the prior representation of Mercer." The court did not explicitly say whether the federal court matter and the state court matter were the same for purposes of the Rule 16-110(C)(2) analysis. The audio transcript of the hearing on the disqualification motion indicates that the court struggled with defining "the matter" for purposes of Rule 16-110(C)(2). In fact, the court ordered supplemental briefing on the issue.

**{26}** "The matter" is not defined in Rule 16-110. However, we may look to other sections of the Rules of Professional Conduct for guidance. The commentary to Rule 16-109 cmt. 2 states that "[t]he scope of '[the] matter' for purposes of this rule depends on the facts of a particular situation or transaction." *Id.* comm. Cmt. 2. Rule 16-111(E)(1) NMRA defines "[the] matter" as "any judicial or other proceeding . . . involving a specific party or parties." Taken together, Rules 16-109 and 16-111 indicate a fact-specific, transactional approach to determining the scope of "[the] matter." The district court in this case appears to have taken a similar transactional approach.

**{27}** The district court's memorandum decision quotes the federal judge's reasoning in deciding to remand Gandy Dancer's removal action to state court, wherein that court stated "that all claims filed in this controversy are derivative of and dependent on the results of the main [state court] claim, and arise out of the same transactions, occurrences and issues." Therefore, the federal court appears to have determined that both the state court and the federal court proceedings arose out of the same "matter." Reviewing the state district court's findings in the light most favorable to its decision, we conclude that the finding that Ford played a substantial role "in the prior representation of Mercer" is the same as "the matter" for purposes of Rule 16-110(C)(2). *See Lujan v. Pendaries Props., Inc.*, 96 N.M. 771, 774, 635 P.2d 580, 583 (1981) ("On appeal, this Court will view the evidence in a light most favorable to support the findings and conclusions of the trial court.").

**{28}** Gandy Dancer continues to argue, as it did unsuccessfully in the district court below, that Ford's previous involvement in the representation of Mercer at the Wagner Ford Law Firm was not "substantial" because her involvement was limited to briefing the issue of remanding the federal removal case back to state court. Gandy Dancer notes that Ford did not enter an appearance on behalf of Mercer in the state court action. In addition, Gandy Dancer asserts that Ford did not have decision-making authority, as she was not the lead attorney. Nevertheless, Gandy Dancer admits that Ford attended at least one meeting with Mercer and various Mercer attorneys, including the lead attorney for the state court action.

**{29}** Gandy Dancer's argument is no more persuasive to this Court than it was to the district court on this point. While it is impossible to determine exactly to what information Ford was privy without breaching attorney-client privilege between Mercer and Ford, one

9

of its former attorneys, it is clear that she had access to confidential communications and played a substantial role in both the federal and state court actions.[1] Ford's participation in both the state and federal cases was of a "degree or extent [that] denotes a material matter of clear and weighty importance." Rule 16-100(L). The district court noted that Ford attended meetings with other counsel and Mercer's principal concerning substantive and negotiating strategies on both state and federal issues and learned confidential information relevant to the pending matter in state court. The district court's conclusion is adequately supported by Mercer's billing records which show that Ford was involved in the case for an additional nine months *after* the remand from federal court. It also appears from the record that Ford's legal research, including easement interpretation, was particularly important to both the federal and state cases.

**Disqualification is Required**

**{30}** As a preliminary matter, the Rules of Professional Conduct may form the basis for disqualification. *See In re a Comm'n Investigation Into the 1997 Earnings of U.S. West Commc'ns, Inc.*, 1999-NMSC-016, ¶ 46, 127 N.M. 254, 980 P.2d 37; *Barnett*, 1998-NMCA-105, ¶¶ 15-16 (interpreting Rule 16-111(C) and Rule 16-109 NMRA as providing the basis for disqualification of an attorney). As explained *supra*, the district court erred in concluding that it could balance the equities, even after finding that Ford had played a substantial role "in the prior representation of Mercer." The district court also erred in concluding that a screening process was an appropriate remedy for the Riley firm's violation of Rule 16-110(C). Once the district court found that Ford had access to confidential information and had played a substantial role on the other side "in the prior representation of Mercer," by its own terms Rule 16-110(C) mandated disqualification of the entire Riley firm. The district court had no discretion in the matter.

**{31}** To summarize, Rule 16-110(C) states that a "firm *may not* knowingly represent a person in a matter in which that [firm's] lawyer is disqualified under Paragraph A or B of Rule 16-109 . . . ." (Emphasis added.) The district court found that Ford had a conflict of interest under Rule 16-109(A). Therefore, in order to continue to represent Gandy Dancer after hiring Ford, the Riley firm would have needed to meet one of the two exceptions to Rule 16-110(C), which it could not do.

**{32}** The district court found that Ford had "information protected by Rules 16-106 and

---

[1]The ABA has proposed amending Model Rule 1.6 to allow a lawyer to reveal confidential information "to detect and resolve conflicts of interest between lawyers in different firms, but only if the revealed information would not compromise the attorney-client privilege or otherwise prejudice the client." (available at http://www.americanbar.org/content/dam/aba/administrative/ethics_2020/2012_hod_ann ual_meeting_105f.authcheckdam.pdf). We call on the New Mexico Code of Professional Conduct Committee to study whether similar amendments are needed to our rules.

16-109 . . . that is material to the matter," thus foreclosing the first exception. *See* Rule 16-110(C)(1). As to the second exception, the district court found that Ford played a substantial role "in the prior representation of Mercer," which we have interpreted to be the same as "the matter" under Rule 16-110(C)(2). Therefore, the second exception was also unavailable to the Riley firm.

**{33}** Despite the Riley firm's failure to meet the requirements of Rule 16-110, Gandy Dancer contends that the district court retains equitable discretion to refuse to disqualify the Riley firm, relying heavily on *United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 629 P.2d 231 (1980), in which this Court said that "a disqualification motion is of an equitable nature." *Id.* at 244, 629 P.2d at 320. While this is generally true, Gandy Dancer stretches our holding in *United Nuclear* too far.

**{34}** *United Nuclear* was one of the largest and most expensive lawsuits in the history of New Mexico. *Id.* at 161, 629 P.2d at 237. The litigation arose over a dispute between United Nuclear Corporation (United Nuclear) and General Atomic Company (General Atomic) regarding contracts to supply uranium. *Id.* Gulf Oil Corporation (Gulf) was a partner in General Atomic, which was on the other side of the litigation from United Nuclear. *Id.* In 1961, United Nuclear's counsel, the Bigbee Law Firm, began to represent United Nuclear in connection with its uranium activities in New Mexico, and the Bigbee firm continued to represent United Nuclear in the *United Nuclear* litigation. *Id.* at 242, 629 P.2d at 318.

**{35}** In 1971, Gulf hired the Bigbee Law Firm to represent it regarding Gulf's uranium operations in New Mexico; it continued to represent Gulf until the end of 1976, months after the *United Nuclear* litigation had begun. *Id.* at 242-43, 629 P.2d at 318-19. Gulf's uranium production activities in New Mexico later became an issue in the *United Nuclear* litigation. *Id.* at 243, 629 P.2d at 319. General Atomic claimed a substantial relationship between the Bigbee Law Firm's past representation of Gulf and its present representation of United Nuclear, thus creating a danger that confidential information given to the Bigbee Law Firm in its prior representation of Gulf might be used against Gulf's interests in the present action. *Id.* This Court agreed with General Atomic's characterization of a substantial relationship between the two, but declined to disqualify the Bigbee Law Firm. *Id.* at 246, 629 P.2d at 322.

**{36}** *United Nuclear* is easily distinguishable from this case. The decision in *United Nuclear* turned on the issue of Gulf's waiver of the Bigbee Law Firm's conflict of interest. Essentially, *United Nuclear* is a laches decision. General Atomic (acting for Gulf) waited almost twenty months after litigation began to raise the conflict of interest issue. *Id.* at 244, 629 P.2d at 320. During that time the Bigbee Law Firm continued to represent United Nuclear without objection from General Atomic, including representing United Nuclear in various forums such as this Court and the United States Supreme Court. *Id.* This Court questioned the good faith of the motion to disqualify, noting that it was raised only after a series of adverse actions and decisions in General Atomic's state and federal cases against United Nuclear. *Id.* The Court held that a motion to disqualify should be filed at the onset

11

of litigation or promptly once facts upon which the motion is based have become known. *Id.* at 245-46, 629 P.2d at 321-22; *accord also In re Conservatorship & Guardianship of Pulver*, 117 N.M. 329, 332, 871 P.2d 985, 988 (Ct. App. 1994) (same).

**{37}**    In contrast to *United Nuclear*, the district court in the present case found that Mercer filed a timely and good faith motion to disqualify, taking only a matter of days after discovering the conflict, to first warn Riley of the conflict, and then to file its motion for disqualification. Any reliance on *United Nuclear* in the present case is misplaced, and in no event should that prior opinion be read as somehow vesting our courts with the equitable power to ignore the clear mandate of our Rules of Professional Conduct.

**{38}**    In *Chappell v. Cosgrove*, 1996-NMSC-020, 121 N.M. 636, 916 P.2d 836, we also recognized that in certain circumstances a district court can balance the equities in ruling on a motion to disqualify. Curiously, Gandy Dancer does not cite *Chappell* while Mercer cites *Chappell* in support of a different proposition. *Chappell* concerned the application of Rule 16-307 NMRA regarding lawyers acting as witnesses. *Id.* ¶ 12 A close reading of *Chappell* supports our interpretation of Rule 16-110(C). Rule 16-307, like Rule 16-110(C), is mandatory, stating: "A lawyer *shall not* act as advocate at a trial in which the lawyer is likely to be a *necessary witness*." Rule 16-307, (emphasis added). We concluded in *Chappell* that the challenged attorney should not be disqualified because he was not a "necessary witness" within the meaning of Rule 16-307. 1996-NMSC-020, ¶ 12. Had the Court found the lawyer to be a "necessary witness," the lawyer would have been disqualified under the plain meaning of Rule 16-307. *See id.* ¶¶ 12-14. In this case, the district court found, and we agree, that Ford played a substantial role in the matter while representing Mercer. Therefore, Rule 16-110(C) required the disqualification of Ford's new employer, the Riley firm.

**{39}**    Judges do retain some discretion in ruling on motions to disqualify. *See* N.M. R. Prof'l Conduct Scope. ("[V]iolation of a rule does not necessarily warrant any other non-disciplinary remedy, such as disqualification of a lawyer in pending litigation."). Nevertheless, the judge's equitable discretion cannot trump the plain language of a rule, especially when that rule concerns the duty of loyalty. *See Sanders v. Rosenberg*, 119 N.M. 811, 813, 896 P.2d 491, 493 (Ct. App. 1995) ("[a]lthough [a] district court has wide latitude in determining whether to disqualify counsel from participating in a given case, its discretion in such cases is not unlimited . . ."), (internal quotation marks and citation omitted)), *rev'd on other grounds*, 1997-NMSC-002, 122 N.M. 692, 930 P.2d 1144. In failing to disqualify the Riley firm, the district court misapplied the plain language of Rule 16-110(C) mandating disqualification. Mercer would have been forced to go through a trial on the merits with the potential of a breach of client confidences. That potential breach is simply unacceptable.

**{40}**    As mentioned earlier, other states have adopted imputation rules similar to our Rule 16-110(C). Our holding in this case is consistent with the holdings of other state courts interpreting similar rules. For example, in *Eberle Design, Inc. v. Reno*, which interprets Arizona's similar imputation rule, Ariz. Ethics R. 1.10(d), the federal district court stated that if the newly-hired attorney did play a substantial role in the matter, screening would not

be available, and the firm could avoid disqualification only if it obtained consent from the affected former client. *Eberle Design, Inc. v. Reno A & E,* 354 F. Supp. 2d 1093, 1096 (D. Ariz. 2005). The court concluded that Ariz. Ethics R. 1.10(d) "results in disqualification of the new firm only when the joining lawyer acquired material and confidential information about the former client *and* played a substantial role in the former client's case." *Eberle Design,* 354 F. Supp. 2d at 1097. We believe the same interpretation should apply to Rule 16-110(C).

**{41}**　　In *Litigation Management., Inc. v. Bourgeois*, 915 N.E.2d 342 (Ohio Ct. App. 2009), the Ohio Court of Appeals held that an associate attorney whose law firm represented employees in an action brought by their former employer, who was personally disqualified from representing the employees due to her involvement in a substantially related matter while working for a different law firm that represented the former employer, had substantial responsibility in the earlier matter. *Id.* at 348-49. Therefore, under Ohio's imputation rule, the attorney's new law firm was also disqualified from representing the employees. *Id.* The court also found, as in this case, that the disqualified attorney's legal research was especially important to the earlier matter so as to contribute to her substantial role in the case. *Id.* at 348.

**{42}**　　The remedy chosen by the district court in this matter—referring the Riley firm to the New Mexico Disciplinary Board while continuing its representation of Gandy Dancer—was simply inadequate. While Mercer certainly retains the option of filing a disciplinary complaint, the disciplinary process is separate from any individual court proceeding. Disciplinary action is usually taken against an attorney's license and operates under a different procedural system. *See* Rule 17-206 NMRA (specifying types of discipline, including disbarment and suspension). Any potential disciplinary action taken against the Riley firm would be separate from actions taken by the district court in the BNSF case. The Disciplinary Board cannot undo the potential harm to Mercer in having to try a case, knowing that opposing counsel may be privy to confidential client information.

**{43}**　　The Rules of Professional Conduct lay out a clear and detailed process for law firms that wish to hire an associate. Such firms have an obligation to contact opposing counsel to ascertain whether the prospective associate possesses confidential information material to a particular case or whether the associate played a substantial role in a particular case. If the answer to either of these questions is yes, the hiring law firm should ask the former client for a waiver of the conflict pursuant to the applicable Rules of Professional Conduct. *See* Rules 16-109(A); 16-109(B)(2); 16-110(D). If it cannot obtain a waiver, the law firm proceeds at its own peril.

**{44}**　　We recognize that sometimes it may be difficult for a court to determine whether an attorney played a substantial role in the representation of a former client without invading the attorney-client privilege. Since the district court was able to adequately address these issues in this case, we decline to fully address how courts should approach these situations. Nevertheless, possible options may include the appointment of a special master to gather

13

evidence on the matter while restricting what the special master may disclose to the court to protect attorney-client privilege, or ordering the challenged law firm to hire contract counsel.[2]

**{45}**     We also acknowledge that our ruling may result in limiting the lateral movement of attorneys between law firms.  Indeed, our rule recognizes that "[i]f the concept of imputation were applied with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel."  Rule 16-109 comm. cmt 4.  Nevertheless, "[t]he [legal] profession has a responsibility to assure that its regulations are conceived in the public interest and not in furtherance of parochial or self-interested concerns of the bar."  N.M. R. of Prof'l Conduct pmbl.  In enforcing the prohibition contained in Rule 16-110(C), the Court is acting to preserve the public trust in the role of a lawyer.  To allow an attorney to change sides in litigation would be contrary to the public's expectation of undivided loyalty.  *See Almanza*, 1996-NMCA-013, ¶ 4 ("The client is entitled to the undivided loyalty of the attorney.").  It is also contrary to the spirit of our Rules of Professional Conduct and traditional notions of fairness.

**CONCLUSION**

**{46}**     For the foregoing reasons, this Court issued a writ of superintending control ordering the district court to disqualify the Riley firm from further representation of its client in this case.

**{47}     IT IS SO ORDERED.**

 

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

_____
**PAUL J. KENNEDY, Justice**

---

[2]We call on the New Mexico Code of Professional Conduct Committee to study the best method for a district court to determine whether or not an attorney has played a substantial role in a matter without compromising attorney-client privilege.

_____

**CELIA FOY CASTILLO, Chief Judge**
**Sitting by Designation**

**Topic Index for *Mercer v. Reynolds*, No. 33,830**

**APPEAL AND ERROR**
Standard of Review

**ATTORNEYS**
Conflict of Interest
Disciplinary Action
Professional Responsibility

**REMEDIES**
Writ of Superintending Control